

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NOS. 2-07-158-CR
### 2-07-159-CR

MARVIN CARSON                                                APPELLANT

V.

THE STATE OF TEXAS                                          STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In seven points, Appellant Marvin Carson appeals his convictions of aggravated robbery in two cases.  We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## II. Factual and Procedural History

At approximately 11:45 p.m. on March 31, 2006, Brandy Lovaglio was robbed at gunpoint as she was exiting her car in the parking lot of her apartment complex. Approximately five hours later, at 4:45 a.m., a second robbery took place in the parking lot of a nearby apartment complex. The complainant in this crime, Judy Aguilar, was also robbed at gunpoint as she was exiting her car. The perpetrator in both robberies wore a mask and was described by the complainants as a black man of medium height and build. Aguilar's husband, who witnessed his wife's robbery, told the police that the perpetrator jumped into a light-colored, four-door sedan that he believed was a Chevy Impala.

Within an hour of the second aggravated robbery, police stopped two men because the vehicles they were driving, light-colored Impalas, matched the description of the robber's car that was given to the police by Aguilar's husband. The police detained both suspects until the police brought Ms. Aguilar to the traffic stops to determine whether she could identity either suspect as the individual who robbed her. Ms. Aguilar identified the clothes of the second suspect, Appellant, as the clothes worn by the robber. The police later found property belonging to both complainants in Appellant's car.

Subsequently, Appellant was indicted for the aggravated robberies of Lovaglio and Aguilar, to which he pleaded not guilty. The jury found Appellant guilty of both offenses and assessed his punishment at eighteen years' imprisonment in the TDCJ-ID for each case. The trial court sentenced him accordingly.

### III. Disqualification of a Prosecuting Attorney

In Appellant's first point, he argues that he was denied due process because the Denton County Criminal District Attorney's Office was disqualified from his prosecution because the First Assistant District Attorney originally represented him in each of the instant cases.

A. Applicable Facts

On May 22, 2006, Jamie Beck was appointed to represent Appellant on both charges of aggravated robbery. During her representation of Appellant, she negotiated a plea bargain offer of eight years' confinement in the TDCJ-ID. Appellant did not accept the plea bargain offer, and the case was set for jury trial on January 29, 2007, with Ms. Beck as trial counsel.

However, effective January 2, Ms. Beck began employment as the First Assistant District Attorney for Denton County. On January 10, Earl Dobson was appointed to represent Appellant. Subsequently, the State changed the

plea bargain offer from eight years' confinement to thirty-five years' confinement. Appellant rejected the plea offer.

On February 15, Appellant filed a motion to disqualify the Denton County District Attorney's Office from prosecuting his case. At a hearing on the motion, Appellant testified that during the course of Ms. Beck's representation she acquired confidential information and discussed a defense strategy with Appellant, and that based on the change of the plea bargain offer, he was being denied the right to a fair trial. Bill Schultz, the prosecutor assigned to both of Appellant's cases, testified that neither he nor the second-chair prosecutor had ever discussed facts, communications, or strategy about Appellant's case with Ms. Beck. Subsequently, the trial court denied Appellant's motion to disqualify the district attorney's office.

B. Applicable Law

It constitutes a manifest violation of due process for an attorney to represent the State against a client whom he has represented as a private practitioner in the past in the same case. *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals at Texarkana*, 236 S.W.3d 207, 211 (Tex. Crim. App. 2007); *Hernandez v. State*, 24 S.W.3d 846, 852 (Tex. App.—El Paso 2000, pet. ref'd). When a district attorney prosecutes someone whom he previously represented in the same case, the conflict of interest is obvious and the

4

integrity of the prosecutor's office suffers correspondingly. *Ex parte Morgan*, 616 S.W.2d 625, 626 (Tex. Crim. App. 1981). Moreover, there exists the very real danger that the district attorney would be prosecuting the defendant on the basis of facts acquired by him during the existence of his former professional relationship with the defendant. *Id.* Use of such confidential knowledge would be a violation of the attorney-client relationship and would be clearly prejudicial to the defendant. *Id.*

Two pertinent principles exist regarding the disqualification of elected district or county attorneys and their assistants who have previously represented a defendant in a particular matter. *Scarborough v. State,* 54 S.W.3d 419, 424 (Tex. App.—Waco 2001, pet. ref'd). First, if an elected prosecuting attorney has previously represented a defendant in a particular proceeding, then Texas Code of Criminal Procedure article 2.01 disqualifies him from representing the State in the matter and that disqualification is imputed to those assistants "who serve at his will and pleasure."[2] *Id.* (citing *State v. May,* 270 S.W.2d 682, 684 (Tex. Civ. App.—San Antonio 1954, no writ.)). Second,

---

[2] Texas Code of Criminal Procedure article 2.01 states that "[e]ach district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely." TEX. CODE CRIM. PROC. ANN. art. 2.01 (Vernon 2005).

5

if an assistant district or county attorney has previously represented a defendant in a particular proceeding, then that particular attorney is disqualified from assisting in the prosecution of the case, but the elected prosecutor and his other assistants are not. *Scarborough*, 54 S.W.3d at 424.

C. Analysis

Appellant argues that Ms. Beck was clearly disqualified from the prosecution of his cases because she represented him prior to accepting the position with the district attorney's office and because of her supervisory role over those individuals whom prosecuted him.

After reviewing the record, it is apparent that the trial court did not err in denying Appellant's motion to disqualify the Denton County District Attorney's Office. First, the record clearly shows that Ms. Beck did not personally prosecute Appellant. Had Ms. Beck personally prosecuted Appellant after she became employed at the district attorney's office, then it would have been necessary for the trial court to disqualify her because she had previously represented Appellant in the same case. *See Hernandez,* 24 S.W.3d at 851 (holding that it is a violation of the due process of law under the Fourteenth Amendment for an attorney to represent a criminal defendant, and then accept employment with the district attorney's office and *personally prosecute the defendant*) (emphasis added). However, this was not the case. The record

6

does not show, nor has Appellant presented, any evidence demonstrating that Ms. Beck personally prosecuted him in this case.

Nor do we agree with Appellant's argument that merely because Ms. Beck acted in a supervisory role as the first assistant district attorney that the trial court should have disqualified the entire office from prosecuting Appellant. First, an entire staff of prosecutors will only be disqualified if an *elected* district attorney is disqualified because they "serve at the will and pleasure" of the elected district attorney. *See Scarborough,* 54 S.W.3d at 424. Here, the elected district attorney was not disqualified; therefore, no disqualification may be imputed to those prosecutors who work for the district attorney.[3]

Further, we have not found, nor has Appellant cited, any authority that expands this rule of disqualification to include non-elected supervisors, such as a first assistant. Therefore, even though Appellant attempts to show that the entire district attorney's office should have been disqualified because the prosecutors were supervised by Ms. Beck and worked at her "will and pleasure," there simply is no law that supports their disqualification. As the law

---

[3] A trial court can remove a district attorney only for one of three causes: (1) incompetency; (2) official misconduct; or (3) intoxication under section 87.013, and only after the trial by jury mandated. *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 5 (Tex. Crim. App. 1990).

7

stands today, imputed disqualification is applicable only from an *elected* district attorney to those staff members who "serve at his [or her] will and pleasure." *See Scarborough,* 54 S.W.3d at 424 (holding that an assistant district attorney that previously represented a defendant in a particular proceeding is disqualified from assisting in the prosecution of the case, but the elected prosecutor and his other assistants are not); *see also Hernandez,* 24 S.W.3d at 851 (holding that there was no authority to support appellant's argument that his due process rights were violated because his former counsel was employed by the same district attorney's office that prosecuted him).

Lastly, Appellant's due process rights were not violated merely because Ms. Beck and the entire district attorney's office did not voluntarily recuse themselves and request the appointment of a special prosecutor to prosecute Appellant's case. *See State ex rel. Eidson,* 793 S.W.2d at 6. Even though Ms. Beck was in a supervisory position, the record does not show that she had any involvement in this particular case. Indeed, the district attorney's office essentially built a wall between Ms. Beck and those prosecutors who participated in the prosecution of Appellant. Bill Schultz, the prosecutor assigned to both of Appellant's cases, testified that neither he nor the second-chair prosecutor had ever discussed facts, communications, or strategy about Appellant's case with Ms. Beck. Based on the record, we conclude that there

8

is no evidence to support Appellant's bare assertion that Ms. Beck had any participation, direct or indirect, in the case against Appellant. Therefore, we hold that no due process violation occurred. *See State ex rel. Young,* 236 S.W.3d at 211. Accordingly, we overrule his first point.

## IV. Extraneous Offense Evidence

In Appellant's second, third, and fourth points, he argues that the trial court erroneously admitted extraneous offense evidence over his Rule 403, hearsay, and *Crawford* objections. Because all three points concern the same testimony and evidence, we will analyze them together.

## A. Standard of Review

The standard of review for a trial court's admission of evidence is abuse of discretion, and wide discretion is afforded the trial judge. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992); *Lajoie v. State*, 237 S.W.3d 345, 352 (Tex. App.—Fort Worth 2007, no pet.). The trial court's decision should be reversed on appeal only if there is a showing of a clear abuse of discretion. *Theus,* 845 S.W.2d at 881. Only if the court's decision falls outside the "zone of reasonable disagreement" has it abused its discretion. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh'g); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

If the trial judge's decision is correct on any theory of law applicable to the case, however, it will be sustained. *Romero v. State,* 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990). This principle holds true even when the trial judge gives the wrong reason for his decision, and is especially true with regard to admission of evidence. *Id*.

B. Applicable Facts

Before trial began, Appellant's trial counsel filed a motion in limine seeking to prevent the State from introducing evidence of any extraneous offense or bad acts. At the hearing on the motion, the State announced its intention to introduce evidence of a third attempted aggravated robbery that occurred on the same night as the other two robberies. The evidence was to be introduced through the testimony of Officer Curtis regarding a dispatch call he received while interviewing Ms. Aguilar about the aggravated robbery committed against her. The State argued that the evidence was admissible as same transaction contextual evidence and relevant on the issue of identity. At this point in the pretrial hearing, Appellant objected that admission of the evidence violated Rule 403, hearsay, and the Confrontation Clause. The trial court overruled Appellant's objections and denied his motion in limine.

Subsequently, the State brought up the extraneous attempted aggravated robbery offense in its opening statement to the jury, and again when the State

10

called Officer Guy Curtis to testify regarding the dispatch call.[4]  Officer Curtis

testified that at 4:45 a.m. on April 1, he was dispatched to the apartment of

Judy Aguilar on an aggravated robbery call.  Officer Curtis testified that when

he responded to the call regarding the Aguilar robbery, he already knew of the

original aggravated robbery of Brandy Lovaglio and that he should be on the

lookout for a black male of medium build, dressed in dark clothing, and driving

a light colored Chevrolet Impala.  At the Aguilar's apartment, he learned from

Ms. Aguilar's husband, Jorge Aguilar, who witnessed the robbery, that the man

who robbed his wife at gunpoint was black and stocky, that his face was

covered by something, and that the man had run to a silver Impala after the

robbery.[5]  Jorge stressed that the car had a big box or "chest" in the back seat.

Officer Curtis testified that shortly after beginning his interview of the

Aguilars, he received a dispatch call regarding an aggravated robbery attempt

that had just occurred at a nearby apartment complex.  He further testified that

the dispatcher informed him that a light-colored or silver four-door car, driven

---

[4] The trial court overruled Appellant's 403, hearsay, and confrontation clause objections at the pretrial hearing on Appellant's motion in limine, and again at trial.  Upon Appellant's request, the trial court granted a running objection to this line of questioning.

[5] Officer Curtis, whose squad car was an Impala, confirmed with Jorge Aguilar that the car the suspect entered was also an Impala.

by a black male, was seen leaving the scene of the aggravated robbery attempt. Officer Curtis testified that he immediately left the Aguilars' apartment to respond to the call. At this point in Officer Curtis's testimony, the trial court granted Appellant's request for a limiting instruction so that the jury could consider the extraneous offense evidence only for identification purposes.[6]

After the trial court issued the limiting instruction, Officer Curtis resumed his testimony and stated that as he was exiting the Aguilar's apartment

_____

[6] Officer Curtis's testimony regarding the dispatch call included the following:

Q: . . . [D]id dispatch notify you of anything else to be on the lookout for?

A: I heard a vehicle description of a light-colored or silver four-door car that was leaving the area.

Q: Does that fit the description of a Chevrolet Impala?

A: It would.

Q: Four-door car? And did that match the description that was given to you by Mr. and Mrs. Aguilar?

A: It did.

Q: Okay. Aside from the difference between white and silver, did it match the description in terms of the type of vehicle from the vehicle description given in Officer Wolf's report in connection with Brandy Lovaglio?

A: It did, yes, sir.

12

complex, he observed a silver or gray four-door Impala, driven by a black male, drive away from the location where the third attempted robbery had occurred. Officer Curtis also noticed that a big box was in the back seat of the car. Officer Curtis stopped the car, that was driven by Appellant, and a subsequent search resulted in the discovery of a ski mask, gun, and property belonging to Lovaglio and Aguilar.

The jury also heard testimony from Officer Jaime McDonald. Officer McDonald testified that she was dispatched to the Aguilars' apartment in response to an aggravated robbery. She stated that shortly after she and Officer Curtis began to interview the Aguilars, Officer Curtis left the apartment complex because he had received a dispatch call of another attempted robbery. She testified that within two or three minutes she also left to respond to the call, and she drove approximately one block to where Officer Curtis had made a traffic stop of Appellant. She further testified that Appellant was driving a gray Chevrolet Impala. Appellant did not object to this testimony.

Following Officer McDonald's testimony, Detective James Wisenger, the detective who investigated the robberies, testified that the complainant of the third attempted robbery was George Alexander. According to Detective Wisenger, Alexander told the officers that because he was color-blind, he was unable to identify the color of the robber's clothes or mask. Wisenger further

13

testified that Alexander stated that when the robber approached him, Alexander told the robber he did not have any money and so the robber left. Lastly, Detective Wisenger testified that Appellant was not charged with the aggravated robbery of Alexander because Alexander had made it clear that he would not cooperate as a witness.

## C. Probative Value of the Evidence

Appellant contends that Officer Curtis's testimony regarding the dispatch call reporting an attempted robbery should have been excluded because the probative value of the evidence was substantially outweighed by the prejudicial matter of the evidence.

### 1. Applicable Law

As a general rule, to prevent an accused from being prosecuted for some collateral crime or misconduct, the State may not introduce evidence of bad acts similar to the offense charged, even if relevant. *Swarb v. State,* 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). Texas Rule of Evidence 404(b) states that evidence of extraneous offenses is not admissible at the guilt-innocence phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. TEX. R. EVID. 404(b); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). However, this type of evidence may be admissible for other purposes, such as

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b); *Swarb*, 125 S.W.3d at 681.

Ordinarily, to be admissible to show identity, an extraneous offense must be so similar to the charged offense as to mark the offenses as the defendant's handiwork. *Johnson v. State*, 68 S.W.3d 644, 651 (Tex. Crim. App. 2002). For such evidence to be admissible, identity must be an issue in the case. *Id.* Once identification becomes an issue, the State has the burden to show that the two crimes were so similar that they were likely the product of only one person. *Id.*; *Taylor v. State*, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996). In determining similarity of the offenses for the purpose of establishing identity, appellate courts should take into account both the specific characteristics of the various offenses and the time interval between them. *Johnson*, 68 S.W.3d at 651.

*2. Analysis*

In this case, the issue of identity was clearly before the jury. Specifically, the issue of identity was raised during Ms. Aguilar's direct testimony, and again, during her cross-examination. *See id.* (citing *Ransom v. State*, 503 S.W.2d 810, 813 (Tex. Crim. App. 1974) (op. on reh'g) (ruling that identity may become an issue in the case through cross-examination of witnesses)).

15

Ms. Aguilar testified that less than an hour after she was robbed, she identified Appellant as the person who robbed her, relying on the fact that the clothes Appellant was wearing matched the clothing worn by the robber.

Not only was the issue of identity raised in this case, but the extraneous offense was so similar to the other offenses Appellant was charged with that the extraneous offense could be marked as Appellant's handiwork. *See Lane v. State,* 933 S.W.2d 504, 519 (Tex. Crim. App. 1996) (holding that even if the issue of identity is raised, to be admissible, an extraneous offense must be so similar to the offense charged that the offenses are marked as the accused's handiwork). The record shows that the extraneous offense was committed within close temporal and geographical proximity of the charged offenses. It is important to note that the exactness that might be required of an offense committed at a more remote period of time might not necessarily be required for an offense committed within a very short period of time. *Johnson*, 68 S.W.3d at 651. In this case, all three offenses occurred within a few hours of each other, and the second and third offenses actually occurred within minutes of each other.[7] Further, although the three offenses occurred at different

---

[7] Officer Curtis testified that he responded to the dispatch to the Aguilar robbery at 4:45 a.m. and that he arrived at the Aguilars' apartment in less than ten minutes. Within approximately three to four minutes of his arrival, Officer Curtis testified, he received the dispatch call regarding another robbery attempt

16

apartment complexes, they were actually similarly located; indeed, the third robbery attempt actually occurred less than one minute away from the apartment complex where the second offense occurred.[8]

Moreover, in the two robberies and third attempted robbery, the perpetrator approached the complainants with a gun, at night in a parking lot, and with a ski mask covering his face. Given the close temporal and geographical proximity of the offenses as well as the similar manner in which the offenses occurred, we determine that the crimes were so similar that they were likely the product of the same person. *See id.* at 650-51. For these reasons, we determine that the evidence was admissible under Rule 404(b). *See Lane,* 933 S.W.2d at 519 (stating that the court of criminal appeals has previously held that offenses were sufficiently similar to prove identity under Rule 404(b) when (1) both offenses were robberies, (2) both offenses were committed at gunpoint, (3) the defendant was aided by a confederate, and (4) the offenses occurred three days apart).

occurring nearby.

[8] Officer Curtis testified that it only took approximately fifteen seconds to drive from the location of the second robbery to the location where dispatch said another robbery was occurring.

After a trial court properly rules that the evidence is admissible under Rule 404(b), the trial court must then balance probativeness and prejudice under Rule 403. *Montgomery*, 810 S.W.2d at 387; *Feldman v. State*, 71 S.W.3d 738, 754 (Tex. Crim. App. 2002). Because the trial court is in a superior position to gauge the impact of relevant evidence in evaluating its determination under Rule 403, we reverse the trial court's decision to admit the evidence only after a clear abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Jones*, 119 S.W.3d at 421-22. Relevant evidence may be excluded under Rule 403 only when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403; *Mozon*, 991 S.W.2d at 846-47.

A proper Rule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005); *Montgomery*, 810 S.W.2d at 390.

After reviewing the record, we are not persuaded by Appellant's contention that the extraneous evidence of the third attempted aggravated robbery was unfairly prejudicial under Rule 403. We first recognize that the

18

extraneous offense evidence has an inherent probativeness by reason of the similarity of the extraneous offenses to the charged offense. *See Booker v. State,* 103 S.W.3d 521, 534 (Tex. App.—Fort Worth 2003, pet. ref'd). We agree with the trial court that the evidence of the third attempted robbery was highly relevant to the issue of identity. Immediately after being robbed, Ms. Aguilar gave the police a description of the suspect's clothing and vehicle. Her description was similar to the description of the first victim, Lovaglio, as well as the description that was given to Officer Curtis regarding the suspect and vehicle involved in the third attempted aggravated robbery. The record clearly shows that the robberies occurred in close temporal and geographic proximity and occurred in a similar fashion; thus, evidence of the third attempted robbery was relevant. *See Lane*, 933 S.W.2d at 519.

Furthermore, even without these similarities, the dispatch description that led to Appellant's apprehension after the third attempted aggravated robbery also led to the discovery that Appellant had in his possession personal items belonging to complainants of both the first and second robbery. This discovery was a significant piece of evidence tying Appellant to the first and second aggravated robberies. Thus, we determine that the extraneous offense evidence was highly probative because it tended to prove Appellant's identity as the perpetrator. *See Johnson,* 68 S.W.3d at 651.

As for the potential to irrationally impress the jury, it is true that an extremely similar extraneous offense always carries the potential to impress the jury of a defendant's character conformity, an impression the law seeks to avoid. However, the impermissible inference of character conformity can be minimized through a limiting instruction. *Lane,* 933 S.W.2d at 520. In this case, Appellant's trial counsel requested and received a limiting instruction restricting the jury's consideration of the dispatch call for any purpose other than identity. We do not perceive any reason a limiting instruction was any less effective in the present case than in other cases in which identity is an issue. *See id.* Thus, we determine that the evidence did not impress the jury in an irrational way.

As for the amount of trial time needed to develop the evidence, the State spent relatively little time developing this evidence when compared to the time spent developing its case in chief. The State mentioned the dispatch call that Officer Curtis received during the State's opening statements, briefly during Officer Curtis's testimony, and again during the State's closing argument. We do not believe that the amount of time was excessive. *See Lane,* 933 S.W.2d at 520 (stating that where the extraneous offense constituted less then one-fifth of the testimony in the State's case-in-chief (less than one day out of five days of testimony), the amount of time was not excessive).

Lastly, in assessing the State's need for this evidence, we acknowledge that even without the extraneous offense evidence, the record clearly shows that Appellant had committed two aggravated robberies. However, the extraneous offense evidence does tend to prove Appellant's identity as the perpetrator of all three aggravated robberies. Indeed, as we previously discussed, the dispatch description that led to Appellant's apprehension after the third attempted aggravated robbery also led to the discovery that Appellant had in his possession personal items belonging to complainant's of both the first and second aggravated robberies. This evidence serves as the link between Appellant and all three robberies, thus supporting the State's need for the evidence.

After balancing these factors, we determine that the trial court was within the zone of reasonable disagreement when it concluded that the probative value of the extraneous offense was not substantially outweighed by its prejudicial impact. *See Prible,* 175 S.W.3d at 731.

D. Confrontation Clause

Appellant argues that he was denied his constitutional right of confrontation when he was not permitted to cross-examine the dispatcher regarding statements the dispatcher made to Officer Curtis regarding the third aggravated robbery attempt.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause's central concern is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. *Kearney v. State* 181 S.W.3d 438, 441-42 (Tex. App.—Waco 2005, pet. ref'd). The United States Supreme Court held that "testimonial statements" of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only when the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1368-69 (2004).

The threshold issue in our *Crawford* analysis is whether the statements were testimonial. *Kearney*, 181 S.W.3d at 441-42. The court did not define "testimonial," but it noted three formulations of "core" testimonial evidence: (1) ex parte in-court testimony or its functional equivalent, such as affidavits, custodial examinations, prior testimony not subject to cross-examination, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, (2) extrajudicial statements of the same nature contained in formalized testimonial materials, and (3) statements that were made under

22

circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *See Crawford*, 541 U.S. at 51-52, 124 S. Ct. at 1364. The court further explained that the term "testimonial" applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. *Id.* at 68, 124 S. Ct. at 1374.

In this case, we hold that the dispatcher's statements to Officer Curtis do not fall within the categories of testimonial evidence described in *Crawford*. The dispatch call in this case is similar to 9-1-1 calls where statements made during the call were not given in response to structured police questioning or with an eye to future legal proceedings, but were initiated by a complainant or witness in order to obtain police assistance. *See, e.g., Kearney,* 181 S.W.3d at 442-43 (holding that 9-1-1 call reporting a robbery in progress and to summon emergency police help and statements made within the call were nontestimonial in nature). In the same way, the call Officer Curtis received from the police dispatcher was intended to alert him that his assistance was needed at a nearby location because of the occurrence of a crime. The call did not bear any of the official, formal qualities of police interactions that the Confrontation Clause was intended to protect against, and therefore, we determine that it was nontestimonial. *See id.* Because we hold that the

23

disputed statements in this case were not testimonial, Appellant's constitutional right to confront the declarant was not violated. *See Crawford*, 541 U.S. at 51-42, 124 S. Ct. at 1364.

E. Hearsay

Appellant next contends that Officer Curtis's testimony regarding the details of the police dispatch was hearsay without any applicable exception. The Texas Rules of Evidence prohibit the admission of hearsay evidence except as provided by statute or other rules prescribed pursuant to statutory authority. *See* TEX. R. EVID. 802. Hearsay is a statement, including a written statement, other than one made by the declarant while testifying at the trial, which is offered to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d); *Dinkins v. State,* 894 S.W.2d 330, 347 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 832 (1995). Thus, a statement not offered to prove the truth of the matter asserted is not hearsay. *Dinkins*, 894 S.W.2d at 347-48.

In this case, the State argues that the communications between the police officers and the dispatcher were not offered for the truth of the matter asserted because the testimony was elicited for the purpose of showing the circumstances surrounding and leading to the detention of Appellant.

Assuming without deciding that the trial court erred in admitting the testimony, we conduct a harm analysis to determine whether the error calls for

reversal of the judgment.  TEX. R. APP. P. 44.2.  The admission of otherwise inadmissible hearsay is a nonconstitutional error, and therefore is disregarded unless it affected Appellant's substantial rights.  TEX. R. APP. P. 44.2(b); *see Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Moon v. State*, 44 S.W.3d 589, 594-95 (Tex. App.—Fort Worth 2001, pet. ref'd); *Coggeshall v. State*, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref'd).  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Coggeshall,* 961 S.W.2d at 643.  In making this determination, we review the record as a whole.  *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

After reviewing the record, we determine that even if the trial court's admission of the hearsay testimony was error, any error was harmless.  First, any error was not preserved because the same substantive evidence was introduced through Officer McDonald's testimony without objection. *See Reyes v. State*, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002) (stating that even if the State's exhibit was hearsay, any error was not preserved because the same substantive evidence was introduced elsewhere without objection).  Specifically, Officer McDonald testified that on April 1 she responded to the

25

aggravated robbery of Ms. Aguilar. She testified that during her and Officer Curtis's interview of the Aguilars, Officer Curtis received a dispatch call regarding another aggravated robbery attempt at a nearby location. Approximately two to three minutes after Officer Curtis left in response to the call, Officer McDonald also responded. She stated that she drove approximately one block to where Officer Curtis had made a traffic stop of Appellant. Officer McDonald testified that the car Appellant was driving was a gray Chevy Impala.[9] At no point did Appellant object to this portion of Officer McDonald's testimony. Therefore, because Appellant did not object to Officer McDonald's testimony, which included the same substantive evidence that Officer Curtis's hearsay testimony contained, we hold that any error was not preserved. *See id.*

For these reasons, we determine that the trial court's error, if any, in admitting the hearsay testimony did not have a substantial or injurious effect on the jury's verdict and did not affect Appellant's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard any error. *See* TEX. R. APP. P. 44.2(b);

---

[9] Officer McDonald further stated on cross-examination that she recovered property belonging to Ms. Aguilar from the car, including a purse, makeup bag, cell phone and cash. She also stated that there was a big box located in the backseat of the car.

*Moon*, 44 S.W.3d at 594-95 (holding that the erroneous admission of inadmissible hearsay evidence has been held harmless).[10]

F. Conclusion

Having determined that the trial court did not err in admitting Officer Curtis's testimony regarding the dispatch call under a Rule 403 or confrontation clause analysis, and that any error in admitting the hearsay evidence over Appellant's hearsay objection was harmless, we overrule Appellant's second, third, and fourth points.

## V. Exculpatory Evidence

In Appellant's fifth point, he argues that the State failed to turn over exculpatory evidence, therefore depriving him of the opportunity to present a complete defense.

---

[10] To the extent that Appellant argues that the improper admission of the evidence was harmful because the jury assessed him eighteen years' imprisonment for each offense even though he was eligible for probation, we evaluated the punishment phase of trial to determine whether the introduction of the hearsay testimony affected his sentence. Having done so, we determine that his argument is without merit. The record shows that during the punishment phase of trial, the State made no reference to Officer Curtis's testimony regarding the dispatch call he received. Indeed, the only action the State took was to submit a certified copy of a judgment showing that Appellant had previously been convicted for the offense of unlawful carrying of a weapon in 1998. The State then rested. Contrary to Appellant's assertion, there is no evidence that the erroneous admission of the hearsay testimony affected the assessment of Appellant's punishment.

27

## A. Applicable Facts

Before trial began, Appellant submitted a motion to the trial court challenging the eyewitness identification of Appellant. Specifically, the motion challenged Ms. Aguilar's identification of Appellant. At a pretrial hearing on Appellant's motion, Ms. Aguilar testified that shortly after she was robbed, she was taken by the investigating officers to the Dallas Tollway, where the police had detained an individual driving a white Impala. The man, Glossen, had been stopped after the police officer received an area-wide dispatch alerting police that an aggravated robbery had just occurred in the area, and that the suspect was driving a light-colored Impala. Glossen was stopped approximately five miles from the scene of the second aggravated robbery and the aggravated robbery attempt. Ms. Aguilar testified that she did not recognize the man as the individual who had robbed her because his clothing did not match the clothing worn by the robber. Specifically, Ms. Aguilar testified that Glossen was a "person with dark skin, his or her clothes were light-colored, his or her pants were not jeans, they were not denim, they were cloth," and that the individual's pants were different-colored. For these reasons, Ms. Aguilar determined that Glossen was not the person who had robbed her.

Ms. Aguilar further testified that after determining that Glossen did not match the robber's description, the police took her to a location near her

28

apartment complex where the other officers had detained Appellant. Before the police permitted Ms. Aguilar to see Appellant, the police asked her for a description of the clothes the robber was wearing, as well as the contents of her purse that had been stolen. Ms. Aguilar testified that the man who robbed her "was wearing dark tennis shoes and shorts, long denim shorts, dark." The police then brought the second suspect out, and Aguilar identified him as the individual who had robbed her. She later testified that she recognized Appellant because of the clothes he was wearing.

Subsequent to Ms. Aguilar's testimony at the pretrial hearing, Appellant's counsel announced that the State had not provided him with any information regarding the other suspect, Glossen, who Ms. Aguilar had determined was not the individual whom robbed her. Appellant's counsel argued that this information was exculpatory and asked the trial court for a continuance to investigate the other suspect. In response, the State argued that the information was not exculpatory because Ms. Aguilar did not identify the man, the man was stopped only because he was driving a light-colored Impala, and

29

the man had nothing to do with the aggravated robberies.[11]  The trial court

denied Appellant's motion for continuance.

B. Applicable Law

A prosecutor has an affirmative duty to turn over material, favorable

evidence to the defense.  *Little v. State,* 991 S.W.2d 864, 866 (Tex. Crim.

App. 1999); *McFarland v. State*, 928 S.W.2d 482, 511 (Tex. Crim. App. 1996)

(citing *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963)).  The three-part

test used to determine whether a prosecutor's actions have violated due

process is whether the prosecutor (1) failed to disclose evidence (2) favorable

to the accused and (3) the evidence is material, meaning there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of

the proceeding would have been different.  *Little*, 991 S.W.2d at 866.  A

reasonable probability is a probability sufficient to undermine confidence in the

outcome of the trial.  *Ex parte Kimes*, 872 S.W.2d 700, 702-03 (Tex. Crim.

---

[11] A short time later, the State informed the trial court that the police had detained the first individual because he was driving an Impala on the Tollway, even though he was stopped a number of miles away from where the aggravated robberies took place.  After Ms. Aguilar saw the individual and determined that he was not the man who robbed her, the police discovered that the man had outstanding warrants for his arrest.  He was arrested and the police found firearms in his vehicle.  The State brought this information to the trial court's attention prior to the start of trial and outside of the presence of the jury.

30

App. 1993). The mere possibility that undisclosed evidence may have helped the defense or affected the trial's outcome does not establish "materiality" in the constitutional sense. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Whether the evidence is material is viewed in the context of the overall strength of the State's case. *Id.* at 613.

Furthermore, if the evidence was turned over in time for the defendant to use it in his defense, the defendant's claim would fail. *Little*, 991 S.W.2d at 866; *Givens v. State,* 749 S.W.2d 954, 957 (Tex. App.—Fort Worth 1988, pet. ref'd) (stating that if the accused received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might or should have been).

C. Analysis

Appellant contends that the State failed to disclose exculpatory evidence. Specifically, he argues that the undisclosed police report revealed the existence of an additional suspect, Glossen, who perfectly matched the suspect's description in the aggravated robberies. Appellant contends that if the evidence had been disclosed, he could have investigated the other suspect, and there was a reasonable probability that the outcome of the trial would have been different.

31

In the instant case, the prosecution did not completely fail to disclose the alleged exculpatory evidence, rather its disclosure was simply untimely as the State disclosed the information immediately before trial. When the issue is the failure to timely disclose, Appellant must show that had the State disclosed the potentially exculpatory material earlier, there is a reasonable probability that the outcome of the proceeding would have been different.[12] *Hampton,* 86 S.W.3d at 613 n.26; *Olivarez,* 171 S.W.3d at 290.

We determine that Appellant has failed to make such a showing. Even if the evidence regarding the other suspect, Glossen, had been divulged to Appellant at an earlier time, Appellant has failed to show that there is a reasonable probability that the outcome of the trial would have been different. *See Hampton*, 86 S.W.3d at 613 n.26. Indeed, although Appellant asserts that

---

[12] In *Brady* itself, the prosecution's suppression of exculpatory evidence did not come to light until Brady had been tried, convicted, and sentenced, and after his conviction had been affirmed. 373 U.S. at 84, 83 S. Ct. at 1194; *Palmer v. State*, 902 S.W.2d 561, 564-65 (Tex. App.—Houston [1st Dist.] 1995, no pet.).

In contrast, where the prosecution has not completely failed to disclose exculpatory evidence, but rather disclosed *Brady* materials during an ongoing trial, then the inquiry is whether the defendant was prejudiced by the tardy disclosure. If the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been. 373 U.S. at 84, 83 S. Ct. at 1194*.*

further investigation of Glossen could have resulted in a different outcome of his trial, the record does not support such a claim. In contrast, the record clearly shows that Glossen's status as a suspect was very limited. Although Glossen was initially detained because he was driving a light-colored Impala, a vehicle matching the description of the robbery suspect's car, Glossen's status as a suspect was quickly terminated when Ms. Aguilar was given the opportunity to identify Glossen, and she informed the police that he was not the individual who had robbed her. Her determination was based on the differences between the clothes Glossen was wearing and the clothes that the robbery suspect was wearing when he robbed her at gunpoint.[13] Despite Appellant's contention, earlier disclosure of the police report and the information regarding Glossen would not have changed the fact that Ms. Aguilar indicated that Glossen was not the individual who robbed her and that Appellant was the robber. Nor would further investigation of Glossen change the fact that personal items belonging to both Ms. Aguilar and the other complainant, Lovaglio, were found in Appellant's possession. We determine that based on the record, there is not a reasonable probability that had the State disclosed the

---

[13] Ms. Aguilar testified that because the first suspect's pants were different-colored, "they were not denim, they were cloth," she determined that the suspect was not the person that had robbed her.

information regarding Glossen at an earlier time, the outcome of the proceeding would have been different. *Hampton,* 86 S.W.3d at 613 n.26; *Olivarez,* 171 S.W.3d at 290.

Moreover, the record shows that Appellant received the information regarding the other suspect in time to put it to effective use at trial. *See Givens,* 749 S.W.2d at 957. The State first introduced the information regarding Glossen at the pretrial hearing on a variety of motions raised by Appellant. Appellant was again made aware of the information regarding Glossen during the State's direct examination of Detective Wisenger, the detective assigned to investigate the robberies. During Detective Wisenger's testimony, the State offered into evidence a police report prepared by the officer who had detained Glossen on the Tollway. Appellant then had the opportunity to cross-examine Detective Wisenger regarding Glossen's detention. The record clearly shows that Appellant discovered the information early enough to make use of it at trial. *See Givens*, 749 S.W.2d at 957 (stating that where appellant learned of an exculpatory statement when it was introduced into evidence and read into the record in the presence of the jury, he had discovered the statement in enough time to make use of it at trial). Therefore, because Appellant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because the information was not

34

disclosed as early as it might or should have been. *See id.* (citing *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir. 1985)).

Because Appellant has failed to establish a *Brady* violation, we overrule his fifth point.

### VI.  Improper Comments

In Appellant's sixth point, he argues that the State violated his right against self-incrimination by commenting on his failure to testify.  In Appellant's seventh point, he argues that the State repeatedly made improper arguments to the jury which were not cured by the trial court's instruction to disregard.

A. Applicable Law

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Faulkner v. State*, 940 S.W.2d

308, 312 (Tex. App.—Fort Worth 1997, pet. ref'd) (en banc op. on reh'g). Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Archie v. State,* 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Hawkins*, 135 S.W.3d at 77.

In determining whether the trial court abused its discretion in denying the mistrial, we balance three factors: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks; (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie*, 221 S.W.3d at 700.

Except in the most blatant cases, an instruction to disregard a comment on an accused's failure to testify will cure any prejudicial effect caused by the improper comment. *Moore v. State*, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999), *cert. denied*, 530 U.S. 1216 (2000); *see Archie,* 221 S.W.3d at 700. We presume the jury complied with an instruction to disregard improper jury argument. *Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000). In assessing the curative effect of the court's instruction to disregard, the correct inquiry is whether the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory

36

provision and was thus so inflammatory that an instruction to disregard could not cure its prejudicial effect. *Faulkner*, 940 S.W.2d at 312. Only offensive or flagrant error warrants reversal when there has been an instruction to disregard. *Wesbrook*, 29 S.W.3d at 116. If the instruction cured any harm caused by the improper argument, a reviewing court should find that the trial court did not err. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995); *Faulkner*, 940 S.W.2d at 312.

B. Alleged Improper Comment on Appellant's Failure to Testify

Appellant did not testify at trial. During the State's closing argument, the following exchange occurred:

[State]: I've got a question. I've got a question. What is [Appellant] doing with her checkbook?

[Defense Counsel]: Excuse me, Your honor, I'm going to object. That's a comment on my client's failure to testify, and it's improper.

[Trial Court]: Sustained.

[Defense Counsel]: Ask the jury to be instructed to disregard the last comment by the prosecutor.

[Trial Court]: The jury is instructed to disregard the last comment by the prosecutor.

[Defense Counsel]: Because of the nature of the comment, we respectfully request a mistrial.

[Trial Court]: Mistrial is denied.

37

Appellant argues that this exchange was an improper comment on his failure to testify. After reviewing the record, we determine that even if the prosecutor's statement in this case was a comment on Appellant's failure to testify, the severity of the misconduct was minor. The record shows that the as soon at the prosecutor made the remark, the trial court sustained Appellant's objection and immediately instructed the jury to disregard the statement. We presume the jury complied with the instruction.[14] *See Wesbrook*, 29 S.W.3d at 116. The record shows that the trial court gave the jury the precise instruction that Appellant requested, and that the jury was again instructed in the charge that "you cannot, and must not, refer to or allude to the election of any defendant to not testify when you enter your deliberations . . . " Appellant has made no allegation that either of these instructions were deficient. It is evident that the curative measures taken by the trial court were effective to ameliorate any potential harm that may have resulted from the prosecution's

---

[14] After the trial court instructed the jury to disregard the prosecutor's comment, the prosecutor stated, "Now, you could wonder, well, I guess it could be possible that these things [i.e. checkbook] were found, and that when [Appellant's] in the car later there could be an innocent explanation for those things being in that car." Appellant asserts that this was a second comment on his failure to testify made by the prosecutor and argues that this remark compounded the prosecution's earlier comment on Appellant's failure to testify. However, our review of the record shows that Appellant made no objection to this testimony.

improper comment. *See Simpson v. State,* 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (stating that ordinarily, a prompt instruction to disregard will cure error associated with an improper jury argument).

Moreover, in considering the strength of the State's case and the certainty of Appellant's conviction, the record shows that the two armed robberies occurred in different apartment parking lots that were located in close proximity to one another. The complainants testified that the robber, a black man of medium height and build who was wearing long shorts and a mask, fled the scene in a light-colored Impala. Subsequently, Appellant, a black man matching this description, and driving a silver Impala, was apprehended at a nearby location shortly after the second robbery. Furthermore, the record shows that the police officer's search of Appellant's car resulted in the discovery of a mask, gun, and personal property of both complainants of the aggravated robberies. This evidence was substantial and highly persuasive; thus we determine that in light of this evidence, the certainty of Appellant's convictions was high.

Under the facts of this case, we conclude that the trial court sufficiently ameliorated any potential harm caused by the prosecutor's closing argument by sustaining Appellant's objection and instructing the jury to disregard the comment. Accordingly, we overrule Appellant's sixth point.

39

C. Alleged Improper Jury Arguments

        During closing argument the State made the following arguments which

Appellant contends were improper.

    *1. Argument One*

    [State]: . . . And, of course, we know that [Appellant] didn't
    borrow the car. The evidence is, of course, that he's on the rental
    agreement for that car. There's no set of circumstances which
    anything else fits reasonably and rationally and when that's the
    case, *that's the legal definition of excluding the reasonable doubt*
    *possibility.*

    [Defense Counsel]: Excuse me. I'm going to object. There is no
    legal definition. The jury should go by what's in the Court's charge
    and the Court's instructions to the jury, not by what the prosecutor
    says.

The trial court sustained Appellant's objection and instructed the jury to

disregard the prosecutor's comment. Appellant did not request a motion for

mistrial.

Here, Appellant argues that the prosecutor's statement was improper

because it essentially made up a definition of reasonable doubt and asserted it

as the legal definition of reasonable doubt. However, based on our review of

the record and established law, we hold that Appellant forfeited his right to

bring his complaint regarding the argument because he failed to pursue his

objection until an adverse ruling at trial. *See Cockrell v. State,* 933 S.W.2d 73,

89 (Tex. Crim. App. 1996) (holding that a defendant's failure to object to a jury

argument or a defendant's failure to pursue to an adverse ruling on his objection

to a jury argument forfeits his right to complain about the argument on

appeal).[15]

*2. Argument Two*

Appellant also argues that the following statement was improper:

> [Prosecutor]: . . . You've got a guy–if I walked up to you on the street–if I walked up to you on the street right now, if you weren't sitting in that jury box, and I said [l]et [sic] me give you a hypothetical, I've got some aggravated robbery cases I want you to think about, a woman is robbed at gunpoint by a man wearing a ski mask, black man, black male.
>
> [Defense Counsel]: Excuse me, Your Honor.  I'm going to object. I don't believe this is proper.  It's closing argument, not a plea for law enforcement.

Again, the trial court sustained Appellant's objection and instructed the

jury to disregard the prosecutor's comment.  The trial court denied Appellant's

request for a mistrial.

Texas Rule of Appellate Procedure 33.1(a)(1)(A) provides, in relevant part,

that for a complaint to be presented on appeal, a timely request, objection, or

---

[15] The Texas Court of Criminal Appeals reaffirmed its *Cockrell* holding in
*Mathis v. State,* 67 S.W.3d 918, 927 (Tex. Crim. App. 2002).  In that case, the court stated that "even if the error was such that it could not be cured by an instruction, appellant would be required to object and request a mistrial. . . . *Cockrell*, [is] a case perfectly in line with Rule of Appellate Procedure 33.1 and the policies underlying preservation of error."  *Id.*

motion must have been made to the trial court, which "state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1); *Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). Additionally, it is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial. *Heidelberg*, 144 S.W.3d at 537; *Salinas v. State,* 166 S.W.3d 368, 372 (Tex. App.—Fort Worth 2005, pet. ref'd).

Our review of the record shows that Appellant's objection at trial does not comport with his objection on appeal. At trial, Appellant objected because "he did not believe [the argument] is proper. It's closing argument, not a plea for law enforcement." However, on appeal, Appellant argues that the prosecutor's argument was the State's indirect attempt to lower its burden of proof.[16] Specifically, Appellant contends that the State's improper argument demonstrates that the prosecutor was "consciously and actively trying to persuade the jury to disregard the law in order to obtain a conviction," and that

---

[16] Appellant argued that the State's first argument was the State's *direct* attempt to lower its burden of proof, whereas the State's second argument was its *indirect* attempt to lower its burden of proof.

the argument was therefore, unable to be cured by the instruction to disregard. Because Appellant's complaint on appeal does not comport with his objection at trial, we hold that his complaint was not preserved for review. *See Heidelberg,* 144 S.W.3d at 537; *Salinas,* 166 S.W.3d at 372. Therefore, we overrule Appellant's seventh point.

## VII. Conclusion

Having overruled Appellant's seven points, we affirm the judgment of the trial court.

BOB MCCOY
JUSTICE

PANEL A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 24, 2008

43